**In re R.H. NEIL, INC., Debtor.**

**Bankruptcy No. 86 B 20028.**

United States Bankruptcy Court, S.D. New York.

March 28, 1986.

---

Jeffrey L. Sapir, Hartsdale, N.Y., for debtor.

Bruce H. Roswick, New York City, for Corporate Property Investors.

## DECISION ON MOTION FOR AN ORDER TO ASSUME LEASE AND MOTION FOR AN ORDER FOR RELIEF FROM AUTOMATIC STAY.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

R.E. Neil, Inc., the debtor in this Chapter 11 case, has moved to assume its present lease in a shopping center in accordance with 11 U.S.C. § 365(b) and Bankruptcy Rule 6006(a). In a second motion the landlord, Corporate Park Investors, has moved for an order directing the debtor to comply with 11 U.S.C. § 365(d)(3) and for relief from the automatic stay imposed under 11 U.S.C. § 362(a) so as to permit the landlord to commence an action in state court to evict the debtor for nonpayment of rent.

### FINDINGS OF FACT

1. On January 21, 1986 the debtor, R.E. Neil, Inc., filed with this court a petition for reorganizational relief under Chapter 11 of the Bankruptcy Code. Since the filing of its Chapter 11 petition the debtor has continued in possession in the operation of its retail gift shop business in the Nanuet Mall, Nanuet, New York, pursuant to 11 U.S.C. § 1108.

2. The landlord, Corporate Property Investors, is the owner of the regional shopping center known as the Nanuet Mall, located in Nanuet, New York and is the landlord of the premises now occupied by the debtor in the Nanuet Mall.

3. On December 12, 1980, the debtor and the landlord entered into a written lease for the premises in question, for a term of ten years. The current monthly charges for the leased premises are $7,458.86, plus an applicable percentage rent based upon gross sales.

4. The debtor has at various times since September of 1982 defaulted in the payment of rent to the landlord for the leased premises, which have resulted in the land-

lord sending to the debtor during this period approximately seven notices with respect to the debtor's default for the non-payment of rent.

5. By written notice dated January 9, 1986, the landlord informed the debtor that it was in substantial default under the lease for arrears in rent in the sum of $9612.10 for the period ending December 31, 1985, plus January, 1986, rental charges in the amount of $7,458.86, for a total of $17,070.96.

6. On January 18, 1986, the landlord served the debtor with a written notice of termination of the lease, effective January 22, 1986 and demanded that the debtor vacate the leased premises and deliver possession to the landlord. The debtor commenced this Chapter 11 case one day prior to the effective date of termination.

7. Since the filing of its Chapter 11 petition on January 21, 1986, the debtor has been current in the performance of its duties under the lease with the landlord, including the payment of monthly rent.

8. The debtor has proposed to cure the rent defaults over the next three months by payments of $2500 in March, $2500 in April, $5000 at the beginning of May, $5000 in the middle of June and the balance of over $2000 at the end of June, 1986.

9. The uncontradicted facts reveal that the debtor has effected certain economies in the operation of its business, including the reduction of its payroll and the elimination of an unprofitable line of collectible items and figurines. The debtor has experienced an increase in sales since it filed its Chapter 11 petition and its postpetition profits are projected at a 22% increase. The debtor pays on a C.O.D. basis for approximately 95% of its inventory and is not increasing its administration expenses.

## DISCUSSION

The landlord's motion under 11 U.S.C. § 362(d) for relief from the automatic stay in order to permit it to initiate a state court eviction action, should be viewed more appropriately from the standpoint of the debt-or's motion to assume the unexpired lease and the landlord's objections addressed to the debtor's assumption. This is so because a landlord who seeks to enforce its rights under a lease in default is generally not concerned with relief from the automatic stay because the tenant is not regarded as having any equity in the leased premises. *In re Flexipak, Inc.*, 49 B.R. 641, 642 (Bankr.S.D.N.Y.1985); *In re Sweetwater*, 40 B.R. 733, 745, 11 B.C.D. 1220, 1228 (Bankr.D. Utah 1984); *Southside Leasing Company v. Merchants Plaza, Inc., (In re Merchants Plaza, Inc.)*, 35 B.R. 888, 891 (Bankr.D.Tenn.1983); *In re Attorneys Office Management, Inc.*, 29 B.R. 96, 98, 10 B.C.D. 1427, 1428 (Bankr.C.D.Cal.1983); *Bistrian v. Easthampton Sand & Gravel Co., Inc. (In re Easthampton Sand & Gravel Co., Inc.)*, 25 B.R. 193, 197–198 (Bankr.E.D.N.Y.1982). *But see Town of Westport v. The Inn at Long Shore, Inc., (In re The Inn at Longshore, Inc.)*, 32 B.R. 942 (Bankr.D.Conn.1983)

The courts have generally viewed a debtor-tenant's default in the context of assumption or rejection under Code § 365[b] rather than under Code § 362(d) for a lifting of the automatic stay.

1 Norton, Bankr.L. & Prac., § 23.11.60 (1985 ed.). (footnote omitted).

The debtor is in default under the lease in question to the extent of unpaid rent in excess of $17,000. In order to assume this lease the debtor must cure the default and provide compensation for any pecuniary loss, or provide adequate assurance that cure and compensation will occur promptly. 11 U.S.C. § 365(b)(1)(A) and (B). Additionally, the debtor must provide adequate assurance of its future performance under the lease. 11 U.S.C. § 365(b)(1)(C). Adequate assurance of a prompt cure requires that there be a firm commitment to make all payments and at least a reasonably demonstrable capability to do so. *In re Lafayette Radio Electronics Corp.*, 9 B.R. 993, 6 B.C.D. 1334, 4 C.B.C.2d 110 (Bankr.E.D.N.Y.1981); *N.P.C. Realty Co. v. Rose (In re Rose )*, 7 B.R. 911 (Bankr.S. D.Tex.1981); *Eitaro Kishi v. Greco (In re*

*Greco* ), 6 B.C.D. 98, 1 C.B.C.2d 619 (Bankr.D. Hawaii 1980). However, the concept of adequate assurance of future performance of a lease of real property in a shopping center is governed by the specific requirements delineated under 11 U.S.C. § 365(b)(3), which provides as follows:

(3) For the purposes of paragraph (1) of this subsection and paragraph (2)(B) of subsection (f), adequate assurance of future performance of a lease of real property in a shopping center includes adequate assurance—

(A) of the source of rent and other consideration due under such lease, and in the case of an assignment, that the financial condition and operating performance of the proposed assignee and its guarantors, if any, shall be similar to the financial condition and operating performance of the debtor and its guarantors, if any, as of the time the debtor became the lessee under the lease;

(B) that any percentage rent due under such lease will not decline substantially;

(C) that assumption or assignment of such lease is subject to all the provisions thereof, including (but not limited to) provisions such as a radius, location, use, or exclusivity provision, and will not breach any such provision contained in any other lease, financing agreement, or master agreement relating to such shopping center; and

(D) that assumption or assignment of such lease will not disrupt any tenant mix or balance in such shopping center;

. . .

■ The source of the rent under the lease in question is the debtor's income from its retail sales. The debtor has shown that the improvement in its sales profits should provide adequate assurance of its future performance under the lease. The debtor's past sales had not reached that volume sufficient to trigger the percentage rent obligation imposed under the lease. Therefore, there is no percentage rent figure from which to measure a decline. The debtor's business operations will continue as in the past, so that there is no conflict with any radius, location, use, or exclusivity provision in this or any other lease relating to the shopping center. Moreover, the debtor's assumption of the lease will not disrupt any tenant mix or balance in the shopping center.

■ Notwithstanding the debtor's proof that its improved financial posture constitutes adequate assurance of its future performance under the lease, the landlord should not be required to sit by and suffer further loss and delay should the debtor not live up to its projections. Accordingly, the debtor is directed to pay to the landlord the current rent due under the lease on the first day of each calendar month, as required by the terms of the lease. Additionally, the debtor is directed to cure the rent defaults over the next three months by making the proposed payments of $2500 on April 1, 1986; $2500 on April 15, 1986; $5000 on May 1, 1986; $5000 on June 16, 1986 and the balance due of over $2000 on June 30, 1986. In the event that any such payment is not made at such times, the landlord may obtain from this court, upon seven days prior written notice to the debtor, an order directing the debtor to vacate the leased space and to deliver possession of the premises to the landlord.

## CONCLUSIONS OF LAW

1. This court has jurisdiction of the subject matter and the persons in this proceeding in accordance with 28 U.S.C. § 1334 and 28 U.S.C. § 157(a). This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(G) and (M).

2. The landlord's motion for relief from the automatic stay imposed under 11 U.S.C. § 362 is denied conditioned on the debtor's performance in accordance with the assumption of lease requirements imposed under 11 U.S.C. § 365(b).

3. The debtor's motion to assume the lease in question in accordance with 11 U.S.C. § 365(b)(1) and (3), and the landlord's objection which requests the debtor's compliance with 11 U.S.C. § 365(d)(3) are

granted to the extent indicated in the above decision.

SETTLE ORDER in accordance with the foregoing.