**In the Matter of THREE STAR TELECAST, INC., Debtor.**

**HARRIS INTERNATIONAL TELECOMMUNICATIONS, INC., Plaintiff/Movant,**

v.

**THREE STAR TELECAST, INC., Defendant/Respondent.**

**Bankruptcy No. B–86–02022(ESL).**

United States Bankruptcy Court, . D. Puerto Rico.

Feb. 17, 1987.

Mario J. Pabon, O'Neill & Borges, Hato Rey, Puerto Rico, for plaintiff/movant.

William H. Beckerleg, Woods & Woods, Hato Rey, Puerto Rico, for defendant/respondent.

## OPINION AND ORDER

ENRIQUE S. LAMOUTTE, Chief Judge.

This case is presently before the Court on the motion to lift stay filed by Harris International Telecommunications, Inc., ("Harris") on November 13, 1986 to allow Harris to continue a collection action before the U.S. District Court for the District of Puerto Rico. Harris prays that the stay be lifted pursuant to 11 U.S.C. 362(d)(1) for cause, that is, for lack of good faith, and for failure to provide adequate protection to its monthly lease installments. On December 8, 1986 the parties stipulated as to the adequacy of service of process and a preliminary hearing was heard on December 10, 1986. At the December 10, 1986 hearing the parties agreed to have a full evidentiary hearing on January 8, 1987. The hearing was held and the Court asked the parties to submit post hearing memoranda within five (5) days. At the request of the parties the period to file memoranda was extended to January 14, 1987.

At the January 8, 1987 hearing the movant based its allegations of lack of good faith on the documentary evidence which had been attached to its motion to lift stay. Harris also presented as an expert witness its comptroller, Mr. Marvin D. Nickel, on the issue of lack of adequate protection. Debtor-respondent presented its president, Mr. Barakat Saleh, who testified primarily on the issue of good faith, and also offered Mr. Peter Warren as its expert witness to express his opinion of value of the equipment acquired from Harris.

After a careful evaluation of the evidence presented to the court and a thorough analysis of the legal memoranda and applicable law, the court proceeds to enter the following findings of fact and conclusions of law exclusively on the issue of whether the automatic stay should be lifted.

The issue of determining whether the subject instrument is a true lease, a purchase agreement or a security agreement is of crucial importance in determining the applicability of section 365(d), 11 U.S.C. 65(d). However, the court has not been laced in a position to so rule at this time,

and defers its determination on the issue to the near future when the debtor in possession will have to make a decision of whether or not it will assume the lease.

The court is aware that the issue must be determined in accordance with state law and that the Supreme Court of Puerto Rico in *Meyers Bros. v. GELCO*, 114 DPR 116 (1983) recognized leasing agreements to be a sui generis atypical contract, which in essence are a new form of financing agreement designed to conform with the present economic realities. Nevertheless, determining whether an instrument is a true lease hinges on the realities of the lease and not the labels applied by the parties. *In re PCH Associates*, 804 F.2d 193, 199 (2d Cir.1986).

The issue is common in bankruptcy. See *In re Independence Village, Inc.*, 52 B.R. 715 (Bankr.E.D.Mich 1985) and *In re Pacific Express, Inc.*, 780 F.2d 1482 (9th Cir. 1986). The factors outlined by the Court in *In re Mesa Refining, Inc.*, 52 B.R. 359 (Bankr.Colo 1985) are a useful guide to any state law.

Moreover, Chase is a party in interest that may be affected by the final decision and the court has allowed its intervention.

At this time we only conclude that the agreement is ambiguous, and assume it to be an unexpired lease for the only purpose of ruling on the motion to lift stay.

## FINDINGS OF FACT

1. On October 24, 1984 Harris sold to the Chase Manhattan Bank, N.A. ("Chase") certain telecommunications equipment valued at $1,291,162.36. On that same date Chase "leased" the equipment to Three Star Telecast, Inc. ("Telecast") under Lease No. 1008424. Debtor entered into the lease voluntarily.

2. Pursuant to the terms and conditions of the agreement Telecast agreed to pay Chase the total sum of $2,156,718.38. The first payment of $100,065.00 due on April 24, 1985 and seventy eight (78) payments of $26,367.35 each every month thereafter.

3. Telecast defaulted in its payment and on February 28, 1986 Chase assigned to Harris all its rights in the equipment and the agreement. Finance institutions enter into this type of agreements, that is with full recourse, on account of the high risks involved.

4. Telecast and Harris entered into various payment plans. However, Telecast could not meet the payments.

5. In March 1986, attorney Robert J. Griswold had recommended to Mr. Barakat Saleh that a petition under Chapter 11 be filed in order to preserve its rights.

6. Telecast and Harris were in continuous negotiations, up to and including the day that the Chapter 11 petition was filed, that is, October 31, 1986.

7. On October 2, 1986 Telecast filed an action before the District Court for the Virgin Islands, St. Croix Division, against Harris alleging breach of contract and damages.

8. On October 10, 1986 Harris filed a complaint against Telecast before the United States District Court for the District of Puerto Rico, Civil Number 86–1612(HL), demanding payment for the balance of lease contract No. 1008424.

9. Mr. Barakat Saleh made statements to a local newspaper, The San Juan Star, declaring that Telecast had filed for bankruptcy to protect its assets against seizure by Harris, and that as soon as the problem with Harris was settled, Telecast would withdraw its Chapter 11 petition.

10. Mr. Barakat Saleh admitted to making the declarations and explained that the Harris equipment was indispensable to Telecast's operation. That the only way to continue operations and to protect all the creditors was to file for bankruptcy.

11. The immediate reason for the filing was to stop Harris' attachment pursuant to a court order in civil action number 86–1612(HL). It was the only creditor who did not want to continue negotiations outside the court.

12. Debtor has undergone the following efforts to reorganize its business: has obtained new programming, has reduced operational costs by reducing personnel, has

solicited investors and is trying to sell the business.

13. The market value of the Harris equipment acquired by Telecast was $1,291,000.00 as of October 1984.

14. The present market value of the equipment is $285,000.00 if it were liquidated and $435,000.00 if it were sold as a going concern.

The Court, thus, adopts the testimony of Mr. Peter Warren, on account of his experience and training in operating and in the acquisition of equipment of the type subject to the lease agreement. Mr. Warren inspected the equipment and found it to be in excellent operating condition, but stated that the same is not the "state of the art," and, consequently, the market value is low. According to his testimony, this type of equipment depreciates 45% the first year, 15% the second year, 15% the third year, and that after the third year it stabilizes into a linear depreciation. Such a depreciation conforms to reality and contrasts with the desk appraisal performed by Mr. Nickel which gives a depreciated value of $878,-627.00 based on a constant linear depreciation.

Mr. Warren estimated that an additional $100,000.00 to $150,000.00 would have to be added to the $285,000.00, which he found to be the market value of the equipment, if the business was to be sold as an on going concern.

## CONCLUSIONS OF LAW

Harris has based its motion under 362(d)(1) on two grounds: lack of good faith and lack of adequate protection. We shall address each one separately.

### Good Faith

The basic policy behind a chapter 11 petition is to permit the debtor to successfully rehabilitate itself. *NLRB v. Bildisco & Bildisco*, 465 U.S. 513, 104 S.Ct. 1188, 1197, 79 L.Ed.2d 482 (1984); *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, 805 F.2d 440, 446 (1st Cir.1986). Such a purpose must be pursued in good faith, that is, for the rehabilitation of the debtor. Lack of good faith may constitute cause for the dismissal of the petition under section 1112(b), as well as cause to lift the stay under 362(d)(1). *In re Coastal Cable T.V., Inc.*, 709 F.2d 762 (1st Cir. 1983), *Furness v. Lilienfield*, 35 B.R. 1006 (Bankr.D.Md.1983).

■ The evidence before this court shows that the reason which prompted the chapter 11 filing was the Harris attachment. Yet, a preponderance of the evidence shows that avoiding foreclosure was not the only reason for filing, it was the event that triggered the decision. If Telecast would have allowed the attachment then its business would have had no opportunity to reorganize itself, it would have had to close immediately. Preventing the attachment would permit Telecast to attempt to rehabilitate itself. Filing under Chapter 11 has being considered since March 1986 when the business clearly was not meeting its current obligations.

Therefore, the Court finds that the petition was filed in good faith.

### Adequate Protection

Pursuant to Section 365(d)(2) a debtor in possession may assume or reject an executory contract or unexpired lease of personal property "at any time before the confirmation of a plan," unless the court, upon the request of a party in interest, fixes a specific date or period of time. 11 U.S.C. 365(d)(2); *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, supra, at page 447 (805 F.2d 447). This hiatus gives the chapter 11 debtor a reasonable time to decide whether or not to assume or reject the unexpired lease. *Moody v. Amoco Oil Co.*, 734 F.2d 1200, 1215 (7th Cir.1984); *In re Whitcomb & Keller Mortgage Co., Inc.*, 715 F.2d 375, 379 (7th Cir. 1983); *Theatre Holding Corp. v. Mauro*, 681 F.2d 102, 105 (2nd Cir.1982); *In re Gulfco Investment, Corp.*, 520 F.2d 741, 743 (10th Cir.1975). The period after filing and before rejection or assumption gives the debtor in possession a "breathing spell" to make a decision. *In re Sweetwater*, 40 B.R. 733, 743 (Bankr.D.Utah 1984).

■ Executory contracts and unexpired leases are enforceable against the debtor in possession "at the time of assumption of such contract or lease," 11 U.S.C. 365(b)(1), not before. The debtor in possession may continue to use the property until the lease is assumed or rejected. The remedies and rights of a party to an executory contract or unexpired lease with respect to the debtor are primarily found in sections 365(d)(2) and 503(b)(1), and not in the stay relief provisions of section 362(d). The rights of a party are not stayed under 11 U.S.C. 362, they are just unenforceable under section 365 until the debtor opts to assume or reject the contract or unexpired lease. Consequently, as a general rule, the remedies of a lessor is to request the court to order the debtor in possession to decide within a specified period of time to assume or reject under 11 U.S.C. 365(d)(2), and not to pray for adequate protection under 362(d)(1). Lessors are not entitled to be given adequate protection prior to the assumption or rejection of an unexpired lease by a chapter 11 debtor lessee. *In re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385, 390 (Bankr.W.D.Penn.1985).

Several courts have held otherwise. See cases at page 743 in *In re Sweetwater*, supra. However, this court agrees with the rationale and decision of the *Sweetwater* court that the terms of a lease are not enforceable by the non debtor party prior to its assumption and that adequate protection is for the benefit of secured creditors.

The Court in *Sweetwater*, 40 B.R. 743, held that:

"Granting adequate protection to a lessor during the interim between filing of the petition and the decision to assume or reject a lease is contrary· to the Code's classification scheme and would render section 365(b) meaningless".

■ If the debtor in possession opts to assume, it must assume the contract in its entirety, cure all defaults and provide adequate assurance of future compliance, 11 U.S.C. 365(b)(1); *NLRB v. Bildisco*, supra,

104 S.Ct. at 1199. *In re Corporacion de Servicios Medicos Hospitalarios de Fajardo*, supra, at 447–48; *In re Pacific Express, Inc.*, 780 F.2d 1482, 1486 (9th Cir. 1986); *Lee v. Schweiker*, 739 F.2d 870 (3rd Cir.1984). If the contract or unexpired lease is rejected then the non debtor party to the same has an unsecured claim under section 365(g)(1). The party may be entitled to a first priority under section 503(b)(1) for the reasonable value of the services actually received by the debtor in possession. *In re Mammoth Mart, Inc.*, 536 F.2d 950, 954 (1st Cir.1976); *American A & B Coal Corp. v. Leonardo Arrivabene, S.A.*, 280 F.2d 119 (2nd Cir.1960).

The Court in *Sweetwater*, supra, at page 743 stated that:

"The structure of the Bankruptcy Code indicates a Congressional effort to balance competing interests and provide different treatment for different rights and interest."

■ The facts of this case show that the Harris equipment is vital to debtor's operation and that debtor intends to continue using it. In fact, the debtor has offered to pay the amount of $3,600.00 per month as adequate protection.[1] The equities of the case mandate that debtor be responsible to pay Harris a "use and occupance" payment based upon the reasonable value being received during the period between the date of filing and date of rejection.[2]

There is a presumption that the contract rate is the reasonable value, but it is subject to rebuttal, *Dallas Ft. Worth Regional Airport Board v. Braniff Airways, Inc.*, 26 B.R. 628, 631 (N.D.Tex.1982), based on the market value of the services or property. *In re Ram Mfg., Inc.*, 38 B.R. 252 (Bankr.E.D.Pa.1984), *In re Chopper Supermarkets, Inc.*, 19 B.R. 462, 467 (Bankr. S.D.Cal.1982). Depending on the facts of each case the amount may be less, *In re Airlift International, Inc.*, 26 B.R. 61, 65 (Bankr.S.D.Fla.1982), or more. *In re Mas-*

---

1. Debtor has assumed the position that Harris may be a secured creditor, and that the agreement is not a true lease.

2. If assumed, then the total amounts must be cured.

*tercraft Record Plating, Inc.*, 32 B.R. 112, 115 (Bankr.S.D.N.Y.1983).

If the market value of the equipment as an on going concern is $435,000.00, that is, approximately one third (⅓) of the original value contracted for, then the reasonable fair rental value pending a decision by the debtor to assume or reject is also one third (⅓) of the contracted monthly payments—the amount is hereby rounded to $8,500.00.[3]

### CONCLUSION

In view of the foregoing the Court hereby orders that movant's motion for relief from the automatic stay be and it hereby is denied; and it is further ordered that debtor pay movant herein the amount of $8,500.00 per month for the use of the equipment pending a decision to assume or reject the contract.

SO ORDERED.

**3.** The current market rate may be a more appropriate figure, but such evidence was not before the court.