## In re NEW YORK DELI, LTD., Debtor.

### Bankruptcy No. 83–00422.

United States Bankruptcy Court,
D. Hawaii.

June 14, 1984.

Edward C. Kemper, Honolulu, Hawaii, for debtor.

James K. Mee, Honolulu, Hawaii, for Teruya.

## ORDER DENYING APPLICATION TO COMPEL ASSUMPTION OR REJECTION OF LEASE

JON J. CHINEN, Bankruptcy Judge.

New York Deli, Ltd. ("Debtor") is the lessee of Teruya Brothers, Limited ("Teruya"). On August 29, 1983, Debtor filed its petition seeking relief under Chapter 11 of the Bankruptcy Code.

On October 11, 1983, Teruya filed an Application to Compel Adoption or Rejection of Lease and on October 13, 1983, Teruya filed a Motion for Appointment of Trustee and other Relief.

A joint hearing on both motions was held on December 16, 1983, January 4, January 24, February 22 and April 26, 1984. The parties have agreed, pending notice to creditors, to the appointment of an examiner. Based upon the evidence adduced, the files and records herein and arguments of counsel, the Court enters the following Findings of Fact and Conclusions of Law regarding the Application to Compel Adoption or Rejection of Lease.

### FINDINGS OF FACT

1. Debtor and Teruya are corporations organized under the laws of the State of Hawaii.

2. On or about November 21, 1977, Debtor and Teruya entered into a Sublease ("Sublease") whereby Teruya leased to Debtor approximately 4,349.7 square feet of commercial space located in the basement level of the Discovery Bay condominium project, ("Premises") which is part of the Discovery Bay Shopping Center. The space subleased to Debtor formed a part of

a larger area which was leased to Teruya by MEPC Properties (Hawaii), Inc. ("MEPC") under a lease dated April 15, 1977.

3. The Sublease provides that Debtor shall pay to Teruya a guaranteed minimum annual rental of $26,838.00 per annum for the first two years of the lease period, $30,521.64 per annum for the next year, $38,415.24 per annum for the next two years, and $46,308.72 per annum for the next five years. The Sublease also provides for payment of a percentage rental of gross receipts should the percentage of gross receipts exceed the guaranteed minimum annual rental. In addition, Debtor is obligated under the Sublease to pay for a certain pro rata portion of promotional and advertising costs incurred by the Shopping Center, common area maintenance expenses and insurance.

4. In August of 1979, Teruya filed suit in the state court seeking to cancel the sublease and to recover the Premises for nonpayment of rent. The Debtor counterclaimed against Teruya, alleging that it had been damaged by periodic flooding of the Premises which made them untenantable. Subsequently, Teruya sued the management company, its landlord MEPC, and all parties involved in the construction, design, or maintenance of the basement floor of the Discovery Bay Shopping Center. *Teruya Brothers v. New York Deli, etc.*, Civil Nos. 58977 and 59392 (Consolidated) (First Circuit Court, State of Hawaii).

5. On August 29, 1983, Debtor filed the instant petition for relief under Chapter 11 of the Bankruptcy Code. Jack Gumpert, a manager of Debtor, testified that said petition was filed because of a state court order requiring Debtor to deposit a sum representing rent owed to Teruya into a rental trust fund during the pendency of the state court action, which sum Debtor was unable to deposit.

6. On October 11, 1983, Teruya filed its Application to Compel Adoption or Rejection of Lease and on October 13, 1983, Teruya filed its Motion for Appointment of Trustee and Other Relief.

7. On December 14, 1983, Debtor filed a Motion to Dismiss the bankruptcy proceedings so that it could proceed in its litigation with Teruya and others regarding the flooding damages to the Premises. Teruya objected to Debtor's motion, which was denied by the Court.

8. Debtor asserts and Teruya admits that from time to time the Premises have been flooded. The most recent flooding occurred in December, 1983.

9. Because of the flooding problem, Debtor has had to replace and repair, and restructure the facility prematurely at an expense of $130,000.00–$180,000.00. In addition, Debtor has suffered loss of income because of floods in a yet to be determined amount. The general manager of Debtor has indicated that the value of the improvements, if removed from the facility, would be minimal in relation to the cost, i.e., in the range of $30,000.00-$50,000.00.

10. No plan of arrangement has been proposed. The manager of the restaurant, however, has suggested two alternative courses both of which are premised on resolving the flooding issue at the Premises. One involves selling the relatively longterm sublease; the second involves sub-subleasing. It has been estimated that a sale could generate $200,000.00-$300,000.00. Neither solution is possible until the flooding problem is resolved.

11. Teruya has not been paying the rent for the premises to its own landlord MEPC since the spring of 1983.

12. After a hearing on Teruya's Motion Requesting Relief from Automatic Stay and for Adequate Protection, the court ordered Debtor to pay administrative rent to Teruya from the time of the filing of the petition less two months' rent because of flooding in November and December 1983. See order dated April 27, 1984. Debtor has complied with that order, and is paying the minimum rent for the facility.

13. Debtor has filed income and disbursement statements commencing from the date of filing of the petition. During the initial months of operation until approx-

imately February 1984, Debtor was operating at a loss. During this time period, Debtor experienced two flooding episodes, and was, in fact, closed for two to three weeks after the November flood. Since March 1984, Debtor has shown a monthly profit, which has been increasing even with Debtor required to pay the minimum monthly rent.

14. Teruya asserts that Debtor should be required to immediately affirm or reject the lease. Debtor contends that, pending resolution of the state actions, it should not be compelled to accept or reject the lease en toto since Teruya is not complying with its obligations under the lease to provide Debtor with quiet enjoyment of the premises due to the flooding. (Article 37 of the lease.)

## CONCLUSIONS OF LAW

1. Section 365(a)(2) of the Bankruptcy Code provides,

(2) In a case under Chapter 9, 11, or 13 of this Title, the trustee may assume or reject an executory contract or unexpired lease of the debtor at any time before the. confirmation of a plan, but the court, on request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

2. Section 365(d)(2) has been interpreted by the courts to mean that a trustee or debtor in possession has a "reasonable time" within which to affirm or reject an executory contract or lease. *Theatre Holding Company v. Mauro*, 681 F.2d 102, 105 (2d Cir.1982); *2 Collier on Bankruptcy* ¶ 365.03[1] at 365–20 (15th Ed.1984) and cases cited therein.

■ 3. What constitutes a "reasonable time" is left to the Bankruptcy Court's discretion in light of all the circumstances of the case. *Theatre Holding Company*, supra; *In re Flying W. Airways*, 328 F.Supp. 1256, 1258 (E.D.Pa.1971).

■ 4. The petition for relief was filed on August 29, 1983. Nine months have now elapsed with no plan proposed. In the ordinary case, such a lapse of time would be sufficient cause to require Debtor to immediately assume or reject a lease. *In re Lionel Corp.*, 23 B.R. 224 (S.D.N.Y. 1982); *In re Giant Markets, Inc.*, 28 B.R. 335 (N.D.Pa.1983).

5. The instant case, however, is not an ordinary landlord-tenant case. The proceedings in state court will resolve the liabilities of both Debtor and Teruya as well as the landlord of the Teruya and the other parties who may ultimately be held responsible for the flooding of the premises. Debtor itself sought to dismiss this action to proceed with the state court actions but Teruya opposed the dismissal. As a result, the question of liability for the flooding remains unresolved.

6. Teruya has not been paying rent to MEPC since the spring of 1983. On the other hand, Debtor has been paying administrative rent to Teruya since filing and in addition has made substantial investment in the premises. Requiring Debtor to assume or reject the sublease at this time may result in a large loss of Debtor's investment and repair costs.

7. Since Debtor has been paying administrative rent for the post-petition period as ordered by the Court and, since Debtor is now operating at a profit, continued payment of the rent appears likely.

Based on the foregoing, the Court finds. that it is not in the best interests of Debtor and the creditors to require Debtor to assume or reject the lease at this time. The Application to Compel Assumption or Rejection of Lease is thus denied. However, the Court will retain jurisdiction of this matter until resolution of the potential liabilities of various parties by the state court or until an examiner, if appointed, files its report. Meanwhile, Debtor is required to continue payment of administrative rent as previously ordered. Teruya is granted leave to renew this motion if circumstances change.