**In re WHEELING–PITTSBURGH STEEL CORPORATION, et al., Debtor.**

**Bankruptcy No. 85–793 PGH.**

United States Bankruptcy Court, W.D. Pennsylvania.

Oct. 21, 1985.

---

Reed Davis and Amy M. Tonti, Davis Reilly, P.C., Pittsburgh, Pa., and John A. Graham and J. Michael Zikas, II, Frandzel & Share, Beverly Hills, Cal., for Phoenix Leasing, Inc.

M. Bruce McCullough, Gary P. Nelson and Stephen W. Johnson, Buchanan Ingersoll, .P.C., Pittsburgh, Pa., for Wheeling-Pittsburgh Steel Corp. et al.

MEMORANDUM OPINION ON MOTION OF PHOENIX LEASING INC. TO COMPEL ASSUMPTION OR REJECTION OF UNEXPIRED LEASE, ADEQUATE PROTECTION, AND RELIEF FROM THE AUTOMATIC STAY, AND JUDGMENT FOR POSSESSION

WARREN W. BENTZ, Bankruptcy Judge.

### Case Summary

This matter comes before the court on Phoenix Leasing, Inc.'s Motion to Compel Assumption or Rejection of Unexpired Lease, Adequate Protection, and Relief from the Automatic Stay and Judgment for Possession. For the reasons discussed below,[1] the Motion is denied.

### Jurisdiction

This court has jurisdiction over the parties and subject matter of this action under 28 U.S.C. § 1334 and the General Order of Reference of the United States District Court for the Western District of Pennsylvania, dated October 16, 1984, entered pursuant to 28 U.S.C. § 157. This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2)(A) and (G).

### Facts

On April 24, 1984, Wheeling-Pittsburgh Steel Corporation ("Wheeling-Pittsburgh" or "the Debtor") entered into an agreement

---

1. This Memorandum Opinion constitutes this court's findings of fact and conclusions of law as required by Bankruptcy Rule 7052 as made applicable to this contested matter by Bankruptcy Rule 9014.

entitled "MASTER LEASE AGREE-MENT" with National Advanced Systems ("NAS") for the use and possession of certain computer equipment. The lease term was 42 months, commencing May 25, 1984 and continuing through and including November 30, 1987 at a rental of approximately $25,000 per month. Under the Master Lease Agreement ·and the Equipment Schedules therein ("Lease Agreement"), Wheeling-Pittsburgh was obligated to make monthly lease payments to NAS and, in addition, maintain the equipment, maintain insurance on the equipment, and pay taxes on the equipment.[2]

On April 25, 1984, NAS sold to Phoenix Leasing, Inc. ("Phoenix" or the "Lessor") all of the computer equipment subject to the Lease Agreement and assigned .to Phoenix all of its rights under the Lease Agreement.

The computer equipment in question is used by Wheeling-Pittsburgh as its data processing center. It consists of a mainframe unit and sophisticated tape drives and tape controllers which comprise the information hub of the company. The computer equipment, or its equivalent, is essential to the operations of Wheeling-Pittsburgh; and in the case of Wheeling-Pittsburgh as a debtor-in-possession, such equipment, or its equivalent, is essential for a successful reorganization.

On April 16, 1985, Wheeling-Pittsburgh filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. Since then, as a debtor-in-possession, Wheeling-Pittsburgh has performed its obligations under the Lease Agreement including making monthly lease payments, maintaining insurance coverage on the computers, and servicing the computer equipment according to the manufacturer's specifications. The Debtor, however, is in prepetition default of three months' lease payments in the total approximate amount of $75,000.

On June 18, 1985, Phoenix filed a Motion to Compel Debtor to Assume or Reject Unexpired Lease; for Adequate Protection; and for Relief from the Automatic Stay and Judgment for Possession ("Motion"). On July 22, 1985, a status conference on the Motion was held. Thereafter, the parties filed briefs. The facts appear to be undisputed except that Phoenix asserts by affidavit that its leased computer equipment is suffering rather acute technological obsolescence. The Debtor might contest such facts at a full hearing. However, the court's disposition of the matter makes unnecessary the determination of the facts asserted by Phoenix's affidavit.

*Issues*

1. Where a Chapter 11 debtor is in prepetition, but not postpetition, default of a computer lease agreement, and the lessor, since the date of filing, is receiving precisely what it bargained for, should the debtor-lessee be directed to assume or reject the lease agreement before confirmation of its plan of reorganization to protect the lessor from an asserted decline in the market value of its equipment caused by advances in computer technology and attendant computer obsolescence?

2. Pending the debtor-lessee's decision to assume or reject, is the lessor of a computer lease entitled to receive periodic payments from the lessee to cover deterioration in the market value of the equipment caused by obsolescence?

*Discussion*

Initially, Phoenix requested an order requiring Wheeling-Pittsburgh to assume or reject the Lease Agreement on the date of the hearing of the Motion or within ten days thereafter. Subsequently, Phoenix requested that the court require the Debtor to assume or reject the Lease Agreement within 90 days of the filing of its August 5, 1985 memorandum of law. Phoenix fur-

---

**2.** In its answer, the Debtor raised the issue of whether the Lease Agreement is a true lease, subject to assumption or rejection, or a security agreement, not subject to assumption or rejec-

tion. The Debtor did not pursue this defense and this court need not decide the issue since the instant dispute may be disposed of on other grounds.

ther argued that, pending assumption or rejection of the Lease Agreement, Wheeling-Pittsburgh must provide adequate protection in the form of regular monthly lease payments, insurance coverage on the computers, maintenance on the computers, and remittance of such additional periodic cash payments as are necessary to protect Phoenix against deterioration in the market value of the computers caused by technological obsolescence. Finally, Phoenix argues that if the Lease Agreement is rejected, or the Debtor fails to provide adequate protection pending assumption or rejection, this court should enter an order terminating the automatic stay, entering a judgment for possession, and compelling the Debtor to immediately turn over the equipment.

### Time Period for Assumption or Rejection

The time within which a debtor must assume or reject an unexpired lease of personal property is controlled by § 365(d)(2), which provides as follows:

> In a case under Chapter 9, 11, or 13 of this title, the trustee may assume or reject an executory contract or unexpired lease of residential real property or of personal property of the debtor at any time before the confirmation of a plan but the court on the request of any party to such contract or lease, may order the trustee to determine within a specified period of time whether to assume or reject such contract or lease.

As this language clearly states, the debtor[3] may wait until the plan confirmation date to make its decision to assume or reject an unexpired lease. Permitting the debtor to make its decision as late as the plan confirmation date enables the debtor to carefully evaluate the possible benefits and burdens of an unexpired lease. It is vitally important to *all* interested parties that the debtor make a prudent assumption or rejection decision, particularly a decision to assume.

Assumption would require the debtor's estate to assume all the liabilities and costs of the unexpired lease as administrative costs which would be paid ahead of the claims of other creditors.

Section 365(d)(2), however, provides that the court *may*, but is not required to, order the debtor to make its decision within a specified period of time prior to the plan confirmation date. In such cases, it has been held that the debtor is entitled to assume or reject within a "reasonable time." *Theatre Holding Co. v. Mauro*, 681 F.2d 102, 105 (2d Cir.1982); *In re New York Deli Ltd.*, 41 B.R. 198, 199 (Bankr. Hawaii 1984). "What constitutes a 'reasonable time' is left to the Bankruptcy Court's discretion in light of all the circumstances of the case." *New York Deli*, 41 B.R. at 200; *Theatre Holding Co.*, 681 F.2d at 105, citing *In re Flying W. Airways*, 328 F.Supp. 1256, 1258 (E.D.Pa.1971).

■ In light of all the circumstances of this case, the court finds that Phoenix's proposed time periods for assumption or rejection of the Lease Agreement are not reasonable. The only default here is a three month prepetition default on a 42 month lease. That prepetition default gives Phoenix only a general unsecured claim against the estate; it does not provide sufficient grounds for shortening the Debtor's time period for making its assumption or rejection decision. It is significant that Wheeling-Pittsburgh is not in post-petition default of the Lease Agreement. When the Debtor-in-Possession continues to perform its post-petition obligations, and the obligee under the executory contract or unexpired lease is suffering no harm or prejudice through the continued utilization of its computer services, there is no need to require the Debtor to assume or reject prior to the confirmation of a plan of reorganization. *See Matter of Whitcomb & Keller Mortg. Co., Inc.*, 715 F.2d 375 (7th Cir.1983). Since the filing date of its Chapter 11 petition, Wheeling-

---

**3.** Wheeling-Pittsburgh as debtor-in-possession has all the powers of a trustee. 11 U.S.C. § 1107(a).

Pittsburgh has been making its regular monthly lease payments, has maintained insurance coverage on the computer equipment, and has maintained the equipment in workable order. Thus, Phoenix is receiving precisely what it bargained for under the terms of the Lease Agreement.

Phoenix, however, argues that "as new technological developments and advanced products become available, the value and marketability of the equipment *could* decline significantly ... [Phoenix's] ability to re-lease the equipment and recover its investment *could* be effectively destroyed if the Debtor elects to turn over the equipment after technology has passed the equipment by." [Phoenix's Memorandum of Law, page 4] [emphasis added]. Assuming *arguendo* that obsolescence does pose a risk to the computer equipment, this consequence is or should be readily foreseeable to one in the computer leasing business. Presumably, NAS included an obsolescence factor along with a depreciation factor in the computation of the payment obligations under the Lease Agreement, or should have done so. Also, Phoenix is presumed to have read, and in any event is bound by, the terms of the Lease Agreement prior to taking the assignment from NAS. Phoenix cannot be permitted to extricate itself from what it now apparently finds to be an unfavorable agreement by forcing Wheeling-Pittsburgh to precipitously assume or reject the Lease Agreement when Phoenix is receiving precisely what it bargained for. *If* Phoenix is being harmed by obsolescence, the harm does not stem from the Debtor's continued utilization of the computer equipment; it stems from the Lease Agreement's failure to adequately account for obsolescence. It also must be observed that when the Debtor was in prepetition default of its lease payments for *three months*, Phoenix did nothing to allay its apparent concern about obsolescence and market value deterioration such as repossessing and re-leasing or selling the computers, as was its right under the Lease Agreement. Now, however, when Phoenix is receiving the full benefit of its bargain and is in a better position than it was

prepetition when it was receiving *no* lease payments, it is very skittish about its position vis-a-vis the Debtor and the computer market. The court finds Phoenix's conduct in this respect quite counter-intuitive.

The Debtor, on the other hand, asserts very good reasons why Phoenix's proposed specified time periods are unreasonable. First, the enormity and complexity of this bankruptcy proceeding is such that the Debtor's limited time and personnel resources are necessarily concentrated on more pressing, though not necessarily more important, matters. Second, the decision to assume or reject the Lease Agreement requires a thorough review of system replacement options which, in view of the rapid changes in computer technology, takes time. Third, any decision to assume or reject the Lease Agreement must take into consideration whether Wheeling-Pittsburgh will be liquidated or reorganized, and this is still an open question in view of the labor strike. Fourth, Wheeling-Pittsburgh has continued to perform its post-petition obligations under the Lease Agreement, thereby giving Phoenix the full benefit of its bargain. And finally, the harm to Phoenix, if any, is not caused by the Debtor's continued utilization of the computer equipment.

In view of all the above, the court finds that Phoenix's proposed specified periods are unreasonable and therefore ought not to be imposed on the Debtor at this time.

### Cash Payments for Depreciation

Phoenix argues that prior to the assumption or rejection of the Lease Agreement, the Debtor must provide it with adequate protection of its interest in the computer equipment. In particular, Phoenix requests adequate protection in the form of (1) regular monthly lease payments; (2) insurance coverage on the computer equipment; (3) maintenance of the computer equipment per manufacturer's specifications; and (4) periodic cash payments to protect against deterioration in the value of the computer equipment. With the exception of the periodic cash payments for mar-

ket value deterioration, Wheeling-Pittsburgh has fully complied with Phoenix's request. Therefore, the issue before the court is very narrow, namely: whether, pending the Debtor's decision to assume or reject the Lease Agreement, Phoenix is entitled to periodic payments to cover deterioration in the market value of the computers.[4]

 Phoenix grounds its right to receive periodic payments on the theory of adequate protection. However, Phoenix's reliance on the concept of "adequate protection" in a lessor-lessee context is misplaced. The concept of "adequate protection" pertains to the property interest of a secured creditor. Lessors are not entitled to adequate protection prior to assumption or rejection of an unexpired lease by a Chapter 11 debtor. *In re Sweetwater*, 40 B.R. 733, 745 (Bankr.Utah 1984).

In *Sweetwater*, First Security Financial (the "Lessor") was the assignee of certain leases with the debtor ("Sweetwater") as lessee. The personal property which was the subject of the leases consisted of property which "rapidly depreciate[s] in value," *Sweetwater*, 40 B.R. at 735, including, as is the case here, a computer. *Id.* Subsequent to the filing of its Chapter 11 petition, the debtor continued to retain possession of and use the leased property, but made no payments under the terms of the leases. The Lessor filed motions requesting the court (1) to set a date by which the debtor must assume or reject the leases; (2) to compel the debtor to adequately protect the Lessor's interest in the property for the period between the filing of the petition and the date of the debtor's assumption or rejection of the leases; and (3) to grant relief from the automatic stay in the event adequate protection is not provided. *Sweetwater*, 40 B.R. at 734. By stipulation of the parties, the only issue presented was whether the Lessor was entitled to

adequate protection of its interest in the leased property pending the debtor's decision to assume or reject the leases. *Id.* at 735.

Without reproducing the *Sweetwater* analysis in its entirety, it is significant to note that the court carefully and thoroughly canvassed the policies underlying Chapter 11 and the legislative history of the adequate protection concept. *Id.* at 735; the court analyzed the Code's classification scheme and discussed the relative rights of lessors and secured creditors *Id.* at 743; and the court discussed the relationship of sections 361, 363(e) and 365(b)(1). After then reviewing the relevant case caselaw, the court concluded that lessors are not entitled to adequate protection pending the lessee's decision to assume or reject, and that "a lessor's exclusive remedies are to be found in section 365." *Id.* at 745. *Accord* Bordewieck, "The Postpetition, Pre-Rejection, Pre-Assumption Status of an Executory Contract," 59 Bankr.L.J. 197, 213 (Summer 1985).

This court is not unmindful that some courts have held that lessors are entitled to adequate protection pending a decision to assume or reject the lease. *See In re Dabney*, 45 B.R. 312, 313 (E.D.Pa.1985); *In re Attorneys Office Management, Inc.*, 29 B.R. 96 (Bankr.C.D.Cal.1983); *In re A.L.S., Inc.*, 3 B.R. 107 (Bankr.E.D.Pa.1980); *Matter of Troy Indus. Catering Serv.*, 2 B.R. 521 (Bankr.E.D.Mich.1980); *Cf. In re Inn at Longshore, Inc.*, 32 B.R. 942 (Bankr.D. Conn.1983). However, as noted in *Sweetwater*, none of the above cited authorities considered the legislative history of the structure of the Bankruptcy Code as a whole in making their determinations. *Sweetwater*, 40 B.R. at 743. The better view and, therefore, the one which this court chooses to follow is that the concept of adequate protection does not apply to

---

4. The Debtor has voluntarily complied with the first three of Phoenix's requests and does not argue that Phoenix is not entitled to these.

Therefore, the court today renders no opinion on the issue of whether Phoenix is legally enti-

lessors; a lessor's exclusive remedy is found in § 365.[5]

The only language in § 365 that even plausibly supports the lessor's argument is unavailing, even assuming it is applicable in this context. Section 365(b)(4) provides:

> Notwithstanding any other provision of this section, if there has been a default in an unexpired lease of the debtor, other than a default of a kind specified in paragraph (2) of this subsection, the trustee may not require a lessor to provide services or supplies incidental to such lease before assumption of such lease unless the lessor is compensated *under the terms of such lease* for any services and supplies provided under such lease before assumption of such lease.

11 U.S.C. § 365(b)(4) [emphasis supplied]. Read literally, the only protections that are afforded to a lessor in these circumstances are those which are found in the lease itself. Phoenix has not argued that the Lease Agreement requires periodic payments for deterioration in market value caused by obsolescence, and the court's review of the Lease Agreement disclosed no such provision. Accordingly, Phoenix is not entitled to periodic payments under § 365(b)(4) for deterioration in the market value of the computer equipment.

Even if this court were to follow the lead of those courts which have held that lessors *are* entitled to adequate protection pending the debtor's decision to assume or reject, Phoenix would still not be entitled to its requested relief. A lessor is only entitled to that amount of adequate protection which would enable him to receive the benefit of his bargain. *See Sweetwater* 40 B.R. at 745 (and the discussion of the policies underlying the adequate protection concept found therein); *In re Dabney,* 45 B.R. 312, 313 (Bankr.E.D.Pa.1985) ["the adequate protection required for a lessor is

the performance *for which he has contracted* ... Adequate protection may be provided by the lessee's compliance *with the provisions of the lease"* (emphasis added) ]. Here, Phoenix is receiving precisely what it bargained for since the Debtor is fulfilling its post-petition obligations under the Lease Agreement. The Lease Agreement does *not* provide for periodic payments for market value deterioration. Therefore, in any event, Phoenix is not entitled to these periodic payments.

### Conclusion

For the foregoing reasons, the Motion of Phoenix Leasing, Inc. has been denied by Order dated August 22, 1985, issued in advance of this Opinion at the request of the moving party.

---

tled to the relief that the Debtor has voluntarily given.

**5.** Additional support for this conclusion comes from § 361, which describes available forms of adequate protection. Section 361 states that "[w]hen adequate protection is required under

section 362, 363 or 364 of this title ..." It is significant that § 365, which deals with unexpired leases and executory contracts, is not included in the list of sections pursuant to which adequate protection may be provided.