## JOHN RISSMAN & SON v. GORDON & FERGUSON, Inc.

Civ. No. 764.

District Court, D. Minnesota, Third Division.

March 12, 1948.

Maurice S. Cayne, of Chicago, Ill., and Paul, Paul & Moore, of Minneapolis, Minn., for plaintiff.

Stryker & Stryker, and Doherty, Rumble, Butler & Mitchell, all of St. Paul, Minn., for defendant.

DONOVAN, District Judge.

This action was commenced by plaintiff to enjoin defendant from infringement of its claimed trade-mark, "Windbreaker". Defendant answering, denied plaintiff was entitled to the relief prayed for and counter-claimed, praying for an injunction against the plaintiff's infringing its claimed trade-mark, "Windbreaker". Each party asks for costs of the suit.

The claims of plaintiff and defendant, except for defendant's claim of prior use, stem from a common source. On August 20, 1918, the Hilker-Weichers Manufacturing Co., a Wisconsin corporation (hereinafter referred to as Hilker), made application for registration of a certain trademark, "Windbreaker". Pursuant to said application the trade-mark "Windbreaker" was registered on February 25, 1919, bearing No. 124,537 (hereinafter referred to as "537"). By assignment dated January 5, 1931, plaintiff obtained such title as then remained in the owner, and on December 20, 1938, plaintiff applied for and obtained a certificate of renewal of said trade-mark.

On November 14, 1923, Guiterman Bros., Inc. (hereinafter referred to as Guiterman), applied to the United States Patent Office for registration of the trade-mark "Windbreaker", which name word it had been using in connection with its leather garments since 1915. Thereupon the Commissioner of Patents declared an interference between said last-named application and the registration of said Wisconsin corporation, and entitled it Guiterman Bros., Inc., v. Hilker-Weichers Manufacturing Co., Interference No. 494. Pending said interference, the parties thereto stipulated that Guiterman was the prior user of the mark, and by agreement permitted Guiterman to "register the name word 'Windbreaker' as a trade mark * * * for use by it on all clothing made of leather, or in which leather is the principal material employed". Said agreement was filed in the United States Patent Office. As a result, said interference was dissolved and certificate of registration No. 210, 447 (hereinafter referred to as "447") of the trademark "Windbreaker" was issued to Guiterman.

By sale on January 1, 1929, the control, property and assets of Guiterman passed on to Gordon & Ferguson, Inc., a Delaware corporation. By conveyance dated April 30, 1931, Gordon & Ferguson, Inc. sold "all its property, assets and good will" to Gordon & Ferguson Company, a Delaware corporation. On December 7, 1943, the last-named company sold its assets and good will to Gordon & Ferguson, a partnership, who, on July 14, 1944, transferred its business and property by bill of sale to the defendant corporation. Guiterman has never been dissolved, and its corporate existence has continued as a subsidiary of defendant and its predecessors.

Both parties invested in extensive advertising featuring the trade-mark "Windbreaker", plaintiff with reference to cloth garments and defendant with reference to leather garments.

It may be generally stated that although the instrument transferring the corporate entity and property of Guiterman to Gordon & Ferguson Company did not specifically describe the trade-mark "Windbreaker" registered in the name of Guiterman in the United States Patent Office, yet nonetheless, from 1929 to the time of the trial defendant and its predecessors used said trade-mark on leather garments sold by Guiterman and defendant, on the assumption that what was Guiterman's was now defendant's. On one occasion a cloth garment bearing a trade-mark authorized by said registration "447" was sold by defendant to the Dayton Company at Minneapolis, Minnesota. Defendant concedes this to be an unintentional error on its part, as it was

obviously the practice of defendant to attach said trade-mark to garments of leather only.

On other occasions illustrated by registration of said trade-mark "447" in various states of the Union (see exhibits 121 to 127 inclusive) it was stated in defendant's application for registration in such states that said trade-mark was to be used as a label on garments manufactured of a material other than leather. Defendant readily admitted during the trial of the present case that such information was inaccurate in that it should have been limited to leather garments only.

Correspondence between plaintiff and defendant introduced in evidence indicates an attempt to arrive at some mutual and satisfactory understanding with reference to the mutual use or sale of the trade-mark. Plaintiff's counsel called on officers of the defendant in St. Paul, Minnesota, and made an attempt to purchase defendant's interest in and to trade-mark "447". Defendant refused to sell its interest in said trade-mark and this lawsuit was commenced.

During the trial defendant, without abandoning its claim of ownership, attempted to prove that "Windbreaker" is generic as used by the purchasing public, and to that end called expert witnesses to testify that from experience based upon long employment in the business of buying and selling sport wear, which included garments described as "Windbreakers", it was their opinion that the public generally did not attach the name word "Windbreaker" to the product of any known manufacturer. In the opinion of such experts the word "Windbreaker" signified a garment made of leather or some like material that would have a tendency to keep out the wind, and that the term has no particular meaning to the trade.

The record is large and many exhibits are in evidence. The issues, stated simply, are:

1. Is the trade-mark valid?

2. If it is valid, is defendant's claim of interest therein valid? If not,

3. Has defendant a common law right to its claimed use of the trade-mark?

4. If plaintiff prevails in its claimed exclusive ownership of the trade-mark, is it estopped from its claim for damages on account of laches?

Registration of a trade-mark by the Patent Office gives rise to a presumption of validity. Chapin-Sacks Mfg. Co. v. Hendler Creamery Co., D.C., 254 F. 550, 553. While claiming validity for "447", defendant, with an abundance of caution, contends "Windbreaker" is generic and not subject to registration. Obviously this contention is directed at plaintiff's claim for damages. If defendant were seriously opposing registration by the Patent Office in the case at bar a large part of the record would not have been devoted to defendant's case tending to establish validity of the same trade-mark for its own purposes. Hence I hold that defendant has not carried the burden required of it to overcome the presumption of validity.

Likewise, I hold defendant's claim to the trade-mark under registration "447" valid. Plaintiff, with much force and logic, contends Hilker's claim to the trade-mark, while valid, does not extend beyond Guiterman, because transfer of the latter's business and good will to defendant was not accompanied by a specific assignment duly acknowledged as provided by 15 U.S.C.A. § 90. Significantly, the Trade-Mark Act of July 5, 1946, 15 U.S.C.A. § 1060, while not intended to be retroactive, adds clarity to the law by providing a statutory rule of evidence that "Acknowledgment shall be *prima facie evidence of the execution* of an assignment and when recorded in the Patent Office *the record shall be prima facie evidence of execution*". (Emphasis supplied.)

Does the lack of a particular type of assignment with acknowledgment from Guiterman to defendant or its predecessors invalidate registration "447"? I think not. No question is raised by plaintiff opposing the legality of the stipulation and agreement leading to the dissolution of the interference referred to. Hilker made an admission against interest, conceding that Guiterman had used the mark prior to Hilker's registration, to which plaintiff traces

title. Warner v. Tennessee Products Corp., 6 Cir., 57 F.2d 642. That agreement and the registration of Guiterman's "447", limited the broad claim of Hilker to that extent and as a successor in title plaintiff is estopped from going beyond and disregarding said limitation. Keystone Driller Co. v. Northwest Engineering Co., 294 U.S. 42, 55 S.Ct. 262, 79 L.Ed. 747; Maulsby v. Minneapolis Casket Co., 8 Cir., 84 F.2d 107.

■■ Plaintiff was charged with notice of the Hilker-Guiterman stipulation and agreement when it acquired Hilker's trademark then encumbered by "447". Its knowledge and subsequent conduct disclaims the character of an innocent, good faith purchaser. If title to a registered trade-mark may pass by means of bankruptcy proceedings, as approved in White Satin Mills Corporation v. Woodward, et al., D.C. Minn., 34 F.2d 158, then assuredly it may pass by informal assignment by a sale of a business and its good will as in the instant case. On appeal of the last-cited case, Judge Booth points out that a formal assignment of a trade-mark is not necessary. Woodward v. White Satin Mills Corporation, 8 Cir., 42 F.2d 987. The law seems well established that a trade-mark may be conveyed with the sale of a business such as Guiterman's. Carroll v. Duluth Superior Milling Co., 8 Cir., 232 F. 675. The defendant, with the exception of the several admitted violations of plaintiff's trade-mark rights, has consistently limited its use of the mark to that agreed upon between Hilker and Guiterman.

While there is much to be desired in the method adopted for transfering the Guiterman title to the defendant, I am of the opinion that Guiterman's common law rights to the use of the mark vested in defendant through mesne conveyances and succession in business and that Guiterman since January 1, 1929, has been a subsidiary and selling agent of defendant and its predecessors.

■ The question of abandonment of the trade-mark by defendant presents a factual problem to the court. It is my opinion that there was not such a lapse of time in the use of the mark as to permit a finding to that effect against defendant. The court is loath to divest a claim of interest in a trade-mark on the record of the instant case, and hence holds there was no such abandonment on the part of defendant. Beech-Nut Packing Co. v. P. Lorillard Co., 273 U.S. 629, 47 S.Ct. 481, 71 L.Ed. 810.

■ Much thought has been given to the points and authorities so ably briefed by counsel. Conduct and correspondence by the parties during the years here in question convinces me that plaintiff and defendant had a mutual understanding of each other's claims and that continued adherence to the Hilker-Guiterman stipulation and agreement by the parties to the instant case will best serve justice. It will eliminate unfair competition and public confusion. Incidentally, it will protect the public from the likelihood of confusion as to the source of origin of the goods and promote fair dealing between the parties involved. Atlas Mfg. Co. v. Street & Smith, 8 Cir., 204 F. 398, 47 L.R.A.,N.S., 1002.

The trade-mark should be limited to use in connection with leather garments as to defendant. The claims of infringement and the counterclaim will be dismissed. This makes unnecessary any further consideration of defendant's point of laches.

Defendant may submit findings of fact, conclusions of law and judgment consistent with the above, with each party bearing its own costs.

An exception is allowed to the parties aggrieved.