**In re SPECIALTY FOODS OF PITTSBURGH, INC., Debtor.**

**Bankruptcy No. 87-03261.**
**Motion Nos. 88-1309M, 88-1503M.**

United States Bankruptcy Court, W.D. Pennsylvania.

Sept. 16, 1988.

Joseph N. Bifano, West Mifflin, Pa., for debtor.

William T. Molczan, Pittsburgh, Pa., for trustee.

John R. Luke, Esq. and William Coholan, Pittsburgh, Pa., for Tambellini Foods, Inc.

Frank A. Conte, Washington, Pa., for Green Valley Packing, Inc.

MEMORANDUM OPINION

JUDITH K. FITZGERALD, Bankruptcy Judge.

The matters before the court are a Motion for Relief from Stay filed on behalf of Tambellini Foods, Inc. (hereafter Tambellini) at Motion No. 88–1309 and a Motion to Sell Personal Property of the Estate, Including License Agreement, Free and Clear of Liens filed by the Trustee at Motion No. 88–1503. These are core proceedings. 28 U.S.C. § 157. Tambellini is the owner of a trademark, the rights under which were licensed to Specialty Foods of Pittsburgh (hereafter the Debtor) on January 17, 1986, and alleges that pursuant to the license agreement the Debtor could not sell or assign the license rights to another without the written consent of Tambellini.

Tambellini contends that the license agreement is not an asset of the Debtor's estate and, therefore, cannot be sold or assigned through the Bankruptcy Court and further that the Debtor has failed to offer it adequate protection of its interest in this property. Tambellini also alleges that Debtor materially breached the license agreement by attempting assignments without prior notice to Tambellini. Tambellini therefore contends that it is entitled to relief from stay.

Both the Debtor and the Trustee have responded to the Motion for Relief from Stay, essentially contending that there was no material breach of the agreement and that the license is the only unencumbered and valuable asset of the Debtor's estate. At trial it was established that Debtor originally acquired its license rights from a division of General Host Corporation and that Debtor may owe amounts to General Host which, several years before this bankruptcy ensued, transferred its rights to Tambellini's predecessor. It was agreed at

trial that Debtor does not owe Tambellini money either for purchase of the license rights or in the nature of a royalty. *See* paragraph 3 and note 3 and accompanying text, *infra.* Furthermore, there is no default in this case which the Trustee must cure within the provisions of § 365.

Although this court's Order Setting Hearing Date on the Trustee's Motion to Sell provided a deadline for written responses and objections to the Motion to Sell, Tambellini filed none. However, Tambellini raised verbal objections to confirmation of the sale at the hearing on the sale. At that time, to facilitate consideration of the oral objections, the court granted Tambellini ten days after the conclusion of the sale hearing to reduce its objections to writing. As filed, however, the written objections included allegations not previously presented to the court in any form.

Witnesses and testimony were presented only during an evidentiary hearing on the Motion for Relief from Stay but the evidence is equally applicable to issues raised in the context of the sale hearing. It is on the basis of the credible evidence so presented that the court makes the following findings of fact and conclusions of law.

FACTS

1. Debtor filed a voluntary Chapter 11 petition on December 2, 1987.

2. The case was converted to Chapter 7 on February 17, 1988.

3. Prepetition, the Debtor obtained an exclusive license to market certain products under the Tambellini trademark by virtue of a license agreement dated February 7, 1984, introduced as Plaintiff's Exhibit 11 (hereafter the "1984 agreement").[1] The licensor under the 1984 agreement was The All-American Gourmet Company, a division of General Host Corporation (hereafter General Host). Thereafter, General Host sold to Tambellini's predecessor all of its right, title and interest in the Tambellini trade name, all trademarks, and all rights and obligations under the 1984 agreement between General Host and Debtor. (Exhibit 14.) *See also* note 3 and accompanying text, *infra.* The parties in interest, therefore, are Tambellini Foods, Inc., and Debtor.

4. Tambellini was responsible for registering and maintaining the registration of the Tambellini trademark under the 1984 agreement and has done so. The Debtor was given an exclusive license of 99 years' duration to market certain items using the trademark. The term was renewable for an unlimited number of 99 year periods. The license agreement further provided that

> [w]ithout the prior written consent of Licensor which shall not be unreasonably withheld or delayed, Licensee may not assign any of its rights under this License Agreement to other than a company which is a wholly-owned subsidiary of Licensee or to a company which purchases the assets and business of Licensee relating to The Products. Licensee must notify Licensor in writing of any permitted assignment. (Exhibit 11 at ¶ 12(a)).

5. The testimony of Debtor's sole shareholder, John Lochra, established that the purpose of the 1984 license agreement was to provide Debtor with the exclusive right to market, on a retail level, certain refrigerated products using the Tambellini tradename and mark.

6. The Debtor and Tambellini entered into a second license agreement on January 17, 1986, introduced as Exhibit 1 (hereinafter the "1986 agreement"). The purpose of this agreement was to expand the types of foods to be marketed exclusively by Debtor in a certain area, and to establish a second trademark under which the Debtor could market those products. This mark is referred to in the 1986 agreement and herein as the "new mark."

7. The terms of the 1986 agreement were substantially similar to that of the 1984 agreement in that the 99 year periods were continued, Tambellini was required to

1. All exhibits were introduced by Tambellini as Plaintiff in the evidentiary hearing on the Motion for Relief from Stay and therefore are referred to by the exhibit number without party designation.

register the new mark, and the Debtor was granted exclusive marketing rights. The 1986 agreement differed, however, in that it provided that the new mark would cover an expanded product line, and the Debtor became responsible, upon thirty days' written notice from Tambellini, for reimbursing Tambellini for the fees, expenses and charges incurred by Tambellini for the registration and maintenance of registration of the new mark. Tambellini did not register the new mark and, therefore, the costs were never billed. Thus, Debtor's obligation to pay was not activated. The license agreements admitted into evidence establish that Tambellini and General Host provided the exclusive licensing agreements to Debtor on a "no royalty" basis but that the parties have continuing obligations under the agreements.

8. The evidence established that although the Tambellini new mark was not registered, it was used by the Debtor in accordance with the 1986 agreement.

9. Paragraph 10 of the 1986 license agreement is substantially similar to paragraph 12 of the 1984 license agreement and provides that:

> [w]ithout the prior written consent of Licensor, which will not be unreasonably withheld, Licensee may not sublicense any of its rights under this agreement to other than a company which is wholly owned by Licensee and only for so long as such company continues to be wholly owned by Licensee, nor may Licensee assign any of its rights under this agreement to other than a company which purchases the entirety of Licensee's assets and business relating to this Exclusive License. Licensee agrees to notify Licensor in writing within ten (10) days following any assignment or sublicense permitted by this paragraph, advising Licensor of the rights given and the parties involved. (Exhibit 1 at ¶ 10.)

Although this wording differs somewhat from that of paragraph 12(a) of the 1984 agreement, *see* paragraph 4, *supra,* the effect is the same; that is, Debtor may transfer its rights without the prior consent of the licensor under certain circumstances. In all other circumstances, Tambellini may not withhold consent unreasonably.

10. Tambellini's attorney drafted both license agreements.

11. Testimony established that on December 1, 1987, pursuant to paragraph 10 of the 1986 agreement, the Debtor entered into a sales agreement with Frank Traggone (Exhibit 2) who was in the process of incorporating Adtra Foods, Inc.[2] to carry on the business. Traggone was and is an employee of Green Valley Packing, Inc., the sole bidder at the sale hearing. The agreement between Traggone and Debtor purported to sell the trademark to Traggone and provided that Traggone would assume Debtor's obligation to General Host as well as certain other obligations. Evidence and deposition testimony indicate that General Host had been negotiating with Traggone. *See* Deposition of Frank Traggone at 5–8, 12, 13, 19, 20. The reason is not clear inasmuch as General Host previously had transferred its interest, right and title in the trademark to Bischward, Inc., Tambellini's predecessor in interest.[3] *See* paragraph 3, *supra.* Hand money had been submitted by Traggone to Debtor, but payment on the check was stopped and Traggone elected not to consummate the sale when Traggone became aware that Tambellini, not General Host, owned the trademark and tradename.

2. Although Exhibit 2 states that Debtor had filed a Petition in Bankruptcy, the filing did not occur until December 2, 1987. Traggone's deposition stated that no written agreement was signed with Debtor. Exhibit 2 is signed by Lochra as Debtor's president and Traggone as an individual but Adtra Foods was never incorporated because Traggone's deal with Debtor fell through. *See* Deposition of Frank Traggone at page 3. Accordingly, no agreement with Adtra Foods existed.

3. The testimony established that Debtor remains liable to General Host for the purchase price of the 1984 license rights and there was no evidence that Tambellini has a claim to this debt. That Debtor owes significant amounts to General Host on the purchase price of the 1984 license rights may be a partial explanation for the existence of negotiations between Traggone and General Host, although an inadequate one.

12. Debtor notified Tambellini of the fact that Debtor intended to sell its license rights to Traggone. Notice was given to Tambellini's president, Jack Bisbey, orally and by letter dated December 8, 1987. (Exhibit 3.) Tambellini was not notified in the letter of December 8 that an agreement had been signed on December 1, 1987.

13. Testimony established that the Debtor ceased ordering products in the beginning of November, 1987, but continued to fill orders from its inventory. Debtor was distributing from inventory when Traggone assumed the distribution function immediately upon execution of the December 1st agreement with Debtor. Testimony further established that Traggone, as had Debtor before him, purchased sausage and some other supplies from Green Valley Packing, Inc. (hereafter Green Valley), Traggone's employer and the only bidder present at the sale hearing.

14. Traggone distributed products over a period of approximately three weeks in December, 1987, pursuant to its December 1 agreement with Debtor.

15. In a letter dated December 22, 1987, (Exhibit 5), Tambellini notified Debtor that it wanted information regarding Adtra to "make the proper decisions [with respect to granting or withholding its consent to the agreement] in a manner other than arbitrarily". John Lochra's testimony established that written consent to the arrangement between Debtor and Traggone or Adtra was refused by Tambellini for no reason other than Tambellini's President, Jack Bisbey, had told Lochra that he would sign only a one-page document and the document presented to him was one and one-half pages. Bisbey was present in court but was not called to testify and Lochra's testimony was uncontradicted.

16. On December 21, 1987, nineteen days after the petition in bankruptcy was filed, Tambellini provided Debtor written notice of termination of the 1986 agreement. (Exhibit 4.) The attempted termination was ineffective because of the automatic stay imposed by 11 U.S.C. § 362. *See In Re Rhyne,* 59 B.R. 276 (Bankr.E.D. Pa.1986). Because the 1986 agreement incorporates by reference the 1984 agreement, the letter of December 21, 1987, likewise was ineffective to terminate Debtor's rights under the 1984 agreement and therefore the 1984 agreement and Debtor's interest therein remained property of the estate. Because the attempted termination was ineffective, both license agreements were in force at the time that the bankruptcy petition was filed and became estate property.

17. When the agreement with Traggone fell through, Debtor began negotiations with Green Valley in an effort to sell its rights under both license agreements. On January 8, 1988, the parties memorialized in writing the sale they had negotiated. (Exhibit 6.) This agreement, purporting to sell all assets [4] of Debtor including the license rights, equipment and other assets, is subject to court approval under 11 U.S.C. § 363 inasmuch as it is a sale of assets outside the ordinary course of Debtor's business. It also is subject, by its terms, to Tambellini's consent and cites in this regard paragraph 10 of the 1986 agreement. However, paragraph 10 of the 1986 agreement provides that Tambellini's consent is not required when all of Debtor's assets and business "relating to" the license agreement are sold to one company. *See* Exhibit 1, ¶ 10 and paragraph 9, *supra.* If Debtor were to transfer its license rights to a company which was not purchasing all of its business or was not a wholly-owned subsidiary, it could do so only with Tambellini's prior consent. In the case before the court, however, all assets "relating to" to the license are the subject of the sale and the prior written consent of Tambellini is not required.

18. Brian P. Weiss, a salesman for Green Valley and the son of its owner,

4. The agreements between Debtor and Green Valley, as did that between Traggone and Debtor, provided for the buyer to assume Debtor's obligations on loans secured by vehicles to Union National Bank. Because of the Debtor's lack of equity in the vehicles, Union National Bank was granted relief from stay before the sale at issue occurred. Thus, at the sale hearing, all of Debtor's remaining assets were sold. *See* discussion *infra* at page 371.

George Weiss, testified that Green Valley began to distribute products in late December, 1987, using the Tambellini trademark even though its agreement with Debtor is dated January 8, 1988. Green Valley distributed the same items that Debtor had been purchasing from Green Valley and distributing under the license agreements. Green Valley delivered products to supermarkets as Debtor had done under the 1984 and 1986 agreements. Debtor and the Trustee contend, and the court credits the testimony and the reasonable inferences therefrom which established that it was necessary to maintain the market for Tambellini products by stocking the stores after Debtor ceased operations, thus avoiding the probable result that retailers would replace Tambellini's products with those of its competitors, thereby leaving little or no value in the license agreements.

19. Tambellini claims that it is not adequately protected by the sale since Green Valley "may" not meet its standards. Well before the sale, the Trustee and the Debtor notified Tambellini that Green Valley had offered to purchase the license agreements from Debtor. In addition, Tambellini had ample opportunity during the course of these proceedings to submit evidence as to Green Valley's inability to meet Tambellini's standards or as to any other inadequacy or incapacity attributable to Green Valley. Tambellini failed to produce any such evidence. Green Valley was Debtor's supplier for quite some time before Debtor's bankruptcy case was filed and before execution of the agreement between Debtor and Green Valley. Tambellini never expressed dissatisfaction or objected to Green Valley's participation prior to the filing of the bankruptcy case. The court notes that at the sale hearing Tambellini agreed to permit Green Valley to continue marketing under the license agreements pending this decision on the sale of Debtor's assets. These facts contradict Tambellini's asserted dissatisfaction with Green Valley's ability to function according to Tambellini's standards. Furthermore, Tambellini presented no evidence to support its opposition to Green Valley or which would justify denial of confirmation of the sale, nor has it advanced any rational basis for opposing confirmation of the sale. Thus, in light of the history of operations between and among Debtor, Tambellini, and Green Valley, the court finds that Tambellini's arguments are devoid of merit.[5] To the extent the objections allege that Tambellini's interests are not being adequately protected,[6] the history of operations establishes that Green Valley is able to perform satisfactorily and the objections are overruled. To the extent the objections constitute the

5. Prior to the hearing on the sale Tambellini raised the question whether the bankruptcy filing was valid because Debtor stated in answers to interrogatories that it does not have three directors. Tambellini argues, therefore, that the corporate resolution necessary to a bankruptcy filing could not be obtained. Tambellini introduced as Exhibit 8 a copy of Debtor's bylaws. Article 3, Section 1(a) provides that "[t]he number of directors of the corporation shall be three (3) unless and until otherwise determined by vote of a majority of the entire board of directors. The number of directors shall not be less than three unless all of the outstanding shares are owned beneficially and of record by less than three shareholders, in which event the number of directors shall not be less than the number of shareholders permitted by statute." Although the validity of the filing of the bankruptcy case is not properly before the Court, the Court notes that Debtor's bylaws show that it was incorporated in approximately January, 1984, as a Pennsylvania corporation. In Pennsylvania corporations are permitted to incorporate with one shareholder. *See* 15 Pa.S.A. § 1402 (P.L. 459, No. 216, § 20, as amended July 20, 1968, effective in 30 days). *See also* 15 Pa.S.A. § 1201. John Lochra testified that as of the date of the petition, and for the two years preceding, he was the sole shareholder and that he was the only shareholder at the time of incorporation. As part of the bankruptcy petition Lochra, as an authorized corporate officer, executed an unsworn declaration under penalty of perjury that the filing of the bankruptcy petition was authorized. The filing therefore is valid on its face and no evidence to the contrary was submitted.

6. Furthermore, in the case of *In Re Wheeling–Pittsburgh Steel Corp.,* 54 B.R. 385, 390–91 (Bankr.W.D.Pa.1985), Judge Bentz noted that the concept of adequate protection is not applicable when the item at issue is an executory contract (there, a lease), because § 365 determines the rights of the parties in such a case. The concept of adequate protection is based on the property interest of a secured creditor and does not apply in the executory contract arena.

withholding of consent to the sale at bar, they are unreasonable and, therefore, invalid under the terms of the 1984 and 1986 agreements.

20. Tambellini also claims that the sale price is inadequate and that the license agreements are worth $150,000. This claim was raised for the first time in the written objections which were filed several days after conclusion of the sale hearing. This court's order permitting Tambellini to file written objections to confirmation of the sale after the hearing did not encompass permission to raise new objections. That this was made clear at the hearing is evident from a review of the audio transcript. Furthermore, Tambellini offered no explanation as to why something as important as value was not raised either verbally at the sale hearing or, as it should have been, in writing before the sale and filed with the Clerk in a timely manner. Despite its opportunities, Tambellini failed to offer evidence supporting its assertion of value. The sale, including the dollar amount of Green Valley's offer, was properly noticed and advertised and the only bidder was Green Valley. Based on these facts, Tambellini's bald, unsupported assertion of value is not credible. Moreover, Green Valley was an independent, good faith purchaser which appeared in court by its representative witness, who testified under oath, whereas Tambellini was an interested party whose statement as to value was made by its attorney, not by a sworn witness whose credibility could be explored by cross-examination.

## DISCUSSION

Because this court will enter an Order confirming the sale to Green Valley, Tambellini's Motion for Relief from Stay is rendered moot and relief will be denied. Insofar as Tambellini is concerned about adequate protection of its interests, the reasons given below for confirming the sale sufficiently explain why Tambellini is adequately protected within the meaning of 11 U.S.C. § 362(d)(1) or, alternatively, is adequately assured of future performance as provided in 11 U.S.C. § 365. *See* footnote 6, *supra*.

Tambellini objects to confirmation of the sale on various grounds. First, Tambellini argues that the sale cannot be confirmed because it does not include all of Debtor's assets and therefore is a transfer "in gross" which is violative of the Lanham Act, 15 U.S.C. § 1051 et seq.

Whether or not a transfer of a trademark is in gross and therefore violates the Lanham Act is governed by § 1060 of the Act as interpreted by case law. Section 1060 provides

> [a] registered mark or a mark for which application to register has been filed shall be assignable with the goodwill of the business in which the mark is used, or with that part of the goodwill of the business connected with the use of and symbolized by the mark, and in any such assignment it shall not be necessary to include the goodwill of the business connected with the use of and symbolized by any other mark used in the business or by the name or style under which the business is conducted....

15 U.S.C. § 1060. *See also Visa, U.S.A., Inc. v. Birmingham Trust National Bank*, 696 F.2d 1371, 1375 (F.Cir.1982), *cert. denied*, 464 U.S. 826, 104 S.Ct. 98, 78 L.Ed.2d 104 (1983).

Although the word "goodwill" does not appear in the agreement between Debtor and Green Valley nor in Trustee's motion to sell, the transfer at issue herein does not violate § 1060 inasmuch as the goodwill of the business, as defined by case law, is necessarily part of the sale at issue. In *Matter of Roman Cleanser Co.*, 43 B.R. 940, 947 (Bankr.E.D.Mich., S.D.1984), *aff'd.*, 802 F.2d 207 (6th Cir.1986), the court explained:

> To be valid, an assignment of a mark must be accompanied by an assignment of the goodwill of the business.
>
> > "Good will and its symbol, a trademark, are inseparable. A trademark has no independent significance apart from the good will it symbolizes. If there is no business and no good will, a trademark symbolizes nothing. For this reason, a trademark cannot be

sold or assigned apart from the good will it symbolizes ... even if no physical assets are sold ... goodwill may very well pass to the buyer....

To determine whether an assignment of a trademark is valid, the proper focus is on "the nature of the assignee's use, not the formalism of what assets passed...."

43 B.R. at 947, *citing* 1 J. McCarthy, TRADEMARKS AND UNFAIR COMPETITION, §§ 2.8, 18.2, 18.7, pages 76, 801, 812 (2nd Ed.1984). *See also Visa, U.S.A., Inc. v. Birmingham Trust National Bank,* 696 F.2d at 1375–76. *Cf. The Money Store v. Harriscorp Finance, Inc.,* 689 F.2d 666, 676 (7th Cir.1982) ("it is not necessary to the continuing validity of the mark that tangible assets ... pass to the assignee").

The court further noted that "[t]he requirement that good will accompany the assignment of a mark is to ensure that the mark will continue to be connected with substantially the same products with which the mark has become associated." 43 B.R. at 947. The purpose of the requirement is to avoid deception of customers caused from sudden and severe changes in the nature and quality of goods. *Id. See also Marshak v. Green,* 746 F.2d 927 (2d Cir. 1984). *Cf., Visa, U.S.A., Inc. v. Birmingham Trust National Bank, supra,* 696 F.2d at 1375 (protect consumers from being misled as to source of goods or services); *The Money Store v. Harriscorp Finance, Inc.,* 689 F.2d at 676 ("continuity of things symbolized by the mark"). If this test is met, the transfer is not in gross.

In the case at hand Debtor had been distributing Green Valley's products using the Tambellini trademarks and tradenames as permitted by the license agreements. Green Valley is now distributing its own products using the Tambellini marks and names on an interim basis pending a decision on this sale. "The nature of the assignee's use", *Matter of Roman Cleanser Co.,* 43 B.R. at 947, is identical to that made of the license agreements by Debtor. In addition, there will be no deception of customers nor drastic change in the product because the product and its source are identical to those utilized by Debtor. Thus, the sale at issue is sufficient to transfer goodwill and Tambellini's contention that the sale of Debtor's license rights to Green Valley violates the Lanham Act is devoid of merit.

Furthermore, under the Lanham Act it is not necessary that physical assets be transferred. *Sterling Brewers, Inc. v. Schenley Industries, Inc.,* 58 C.C.P.A. 1172, 441 F.2d 675, 680 (1971). Even if such a requirement existed, the sale to Green Valley meets the test as it included all assets of the estate remaining as of the date of sale. The only assets transferred before the sale were certain vehicles in which Union National Bank held a security interest in an amount which exceeded value. Relief from stay was granted to Union National Bank inasmuch as Debtor had no equity in the vehicles and Union National Bank was not receiving adequate protection of its interest. *See* note 4, *supra.* In addition, the vehicles were not an essential part of the sale inasmuch as the heart of Debtor's business is the license agreements. Thus, in view of "the nature of the assignee's use," the sale at bar is not in gross and does not violate § 1060 of the Lanham Act. *See Matter of Roman Cleanser Co.,* 43 B.R. at 947.[7]

Moreover, in selling the license rights under the 1984 and 1986 agreements, the Trustee is selling all that remains to be transferred. Therefore the Lanham Act is not violated as the transfer is not in gross. *H & J Foods, Inc. v. Reeder,* 477 F.2d 1053, 1055–56 (9th Cir.), *cert. denied,* 414 U.S.

7. A second Order was entered granting relief from stay to Mellon Bank with respect to other assets. This Order's effectiveness was conditioned on, *inter alia,* the Trustee's failure to respond to it within a certain period. The Trustee's reply was the instant motion to sell wherein the Trustee stated that he could not determine the extent or validity of Mellon Bank's security interest and, therefore, Mellon Bank's collateral would be included in the sale and any lien held by Mellon Bank would be transferred to proceeds. Mellon Bank did not object to the sale; thus, the order granting it relief from stay is not in effect and the assets in which it was secured were part and parcel of the sale at issue.

859, 94 S.Ct. 69, 38 L.Ed.2d 109 (1973). *Cf. Sterling Brewers, Inc. v. Schenley Industries, Inc.*, 58 CCPA 1172, 441 F.2d 675, 680 (1971) (court determined that tangible assets need not be included in assignment of trademark with business goodwill in a case involving separate agreements to sell trademark and physical assets to different buyers).

The court further notes that under the terms of both the 1984 and 1986 agreements Tambellini may not withhold its consent unreasonably inasmuch as Green Valley is purchasing all of Debtor's assets and business "relating to" the products and licenses. *See*, Exhibit 11, ¶ 12(a); Exhibit 1, ¶ 10. *See also* paragraphs 4, 9 and 17, *supra*. There was no evidence submitted by Tambellini to indicate that any assets or business of Debtor relating to the products and license were not being transferred. Accordingly, Tambellini's refusal to consent to this sale is neither reasonable nor of any effect.

Tambellini also expressed concern for public health and welfare and objected to confirmation on this ground. Its argument in this regard must be rejected. No evidence was submitted to support the allegation of a threat of public endangerment and, in view of the fact that Green Valley had been providing the products Debtor distributed and that the products are identical to those that Green Valley is now distributing, Tambellini's argument is specious. Furthermore, the public is protected because Tambellini is able to exercise control over the quality of products distributed pursuant to its inspection rights under the license agreements. The principal requirement for a valid license is that it provide "for adequate control by the licensor over the quality of goods or services produced under the mark by a licensee ... to protect the public from being misled." *Visa, U.S.A., Inc. v. Birmingham Trust National Bank*, 696 F.2d at 1377. *See also The Money Store v. Harriscorp Finance, Inc., supra*, 689 F.2d at 676 ("[t]he fundamental policy of consumer protection must always be kept in mind"). The transfer at issue meets the requirement because Tambellini retains the same control it has always had. No evidence or testimony was presented which would tend to show that consumers would be endangered in the least. Tambellini's arguments are not supported by the credible evidence and its bare allegation of a risk to public health and welfare is an insufficient basis upon which to deny confirmation of this sale to Green Valley.

Tambellini further contends that the Trustee must prove that other licensees of the Tambellini trademark are adequately protected by the sale. As noted earlier, the concept of adequate protection is not applicable in this context. *In Re Wheeling-Pittsburgh Steel Corp.*, 54 B.R. 385 (Bankr.W.D.Pa.1985). Even if it were applicable, Tambellini cites no authority for the proposition that entities which are not parties in interest and have made no effort to appear or intervene must be provided adequate protection under the Bankruptcy Code. Furthermore, Tambellini has no standing to raise the rights of entities which are strangers to this litigation. Accordingly, Tambellini's objection to confirmation on this basis is rejected.

In connection with its written objections concerning adequate protection of other licensees, Tambellini asserts for the first time that the license agreements are worth $150,000.00 and argues that therefore the sale cannot be confirmed for $23,000.00. Assuming arguendo that Tambellini has standing to raise the issue of adequate protection of strangers to this litigation, Tambellini does not reveal why the value of the marks licensed exclusively to Debtor should be relevant to adequate protection of other licensees.

Addressing the question of value without reference to other interests, the court notes that the objection as to value was not timely raised and is inconsistent with the context in which this court granted the extension of time to file written objections. *See* paragraph 20, *supra*. Furthermore, no evidence was submitted to show that the value of the license agreements exceeds $23,000.00. To the contrary, the record establishes $23,000.00 as the fair value. Before filing its bankruptcy petition Debtor

sought buyers without success. In the bankruptcy case, the sale was properly advertised and notice was sent to all creditors. A motion requesting an expedited hearing with shortened notice and advertising requirements was denied in order to maximize the opportunity for any interested bidders to appear at the sale hearing and to tender higher or better offers. The Trustee received no inquiries or offers other than that from Green Valley, which was the offerer, successful bidder, and the only bidder present at the sale. There were no objections to the sale except Tambellini's, which were untimely and without merit. The highest and best offer was brought by the Trustee and it is conclusive on the issue of value.[8]

In addition, Tambellini does not have standing to question value. To have standing Tambellini must be a "person aggrieved", *i.e.*, one "whose rights or interests are 'directly and adversely affected pecuniarily'" or whose property has been diminished, burdens increased, or rights impaired by the sale. *In re El San Juan Hotel*, 809 F.2d 151, 154 (1st Cir.1987); *Connellsville Plaza v. Jiffy Foods Corp.*, 92 B.R. 136 (W.D.Pa.1988). Tambellini has no monetary claim against Debtor and no claim to the proceeds of this sale. Accordingly, its pecuniary interests are not affected.

Tambellini is not a party aggrieved on any other basis inasmuch as its property has not been diminished, nor its burdens increased nor its rights impaired. *Connellsville Plaza v. Jiffy Foods Corp., supra.* The only change in the pre-petition status quo to be effected by the sale is that a product supplier of long standing will become the distributor as well. Tambellini retains all of its rights under the agreements and its consent to Green Valley's interim operation as distributor further negates a finding that Tambellini's interests are adversely affected by this sale. There was not a scintilla of evidence submitted in this case to suggest that confirmation of this sale will have any adverse impact on Tambellini. Tambellini therefore is not a "party aggrieved."

Tambellini further argues that the Trustee's motion is effective, if at all, only to transfer rights to the new mark under the 1986 agreement inasmuch as the motion and notice of sale refer to and attach as an exhibit only the 1986 agreement. The court finds that the notice and motion are effective to sell Debtor's rights under both agreements. The notice of sale which was sent to creditors and which was published in the newspapers states that among the assets to be sold is "a License Agreement by and between Debtor (Licensee) and Tambellini Foods, Inc. (Licensor) wherein Licensee has the right to use the Tambellini name and trademark in producing, packaging and selling various stuffs." Under Bankruptcy Rule 2002(c)(1) it is sufficient that a notice of sale generally describes the property to be sold. The notice in this case states no limitations or exclusions and, even though only the 1986 agreement was attached to the motion to sell, it is clear that the purpose of the 1986 agreement was twofold—to expand the line of products subject to the Tambellini trademark under the 1984 agreement and to subject the licensing of these products to the same terms and conditions as those products licensed under the 1984 agreement. Evidence submitted by Tambellini established that Tambellini itself viewed the 1986 agreement as incorporating the 1984 agreement. Exhibit 5 is a letter dated December 22, 1987, from Tambellini's counsel to Debtor's attorney wherein Tambellini's counsel wrote that the 1984 agreement is the "predecessor" of the 1986 agreement. It is clear that all parties in interest, including Tambellini, understood that the sale notice and motion encompassed all of the Debtor's license rights regardless of which agreement the rights arose under. The court holds, therefore, that the Trustee's motion, if effective, would facilitate the transfer of Debtor's rights under both license agreements.

8. The Court notes that good faith of the buyer and seller is not at issue and that the sale comports with *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143 (3d Cir.1986).

Finally, we discuss Tambellini's contention that the Trustee may not sell Debtor's rights under the license agreements because they are executory contracts which were not assumed by a formal proceeding under § 365. The Trustee did not file a formal motion to assume the licenses within sixty days of the date of the order for relief. Instead, he filed the motion to sell within sixty days of that date and the motion was heard in court sixty-three days after that date.

Under 11 U.S.C. § 541 the license agreements and Debtor's rights thereunder are property of the Debtor's estate. Under 11 U.S.C. § 363(b) the Trustee may sell estate property other than in the ordinary course of business. The wrinkle in the case at bar is that the property to be sold consists of rights under executory contracts. Such contracts are subject to assumption or rejection under § 365 and are defined as those "on which performance remains due to some extent on both sides." *Aetna Casualty & Surety Co. v. Gamel,* 45 B.R. 345, 348 (N.D.N.Y.1984), *citing* H.R.Rep. No. 595, 95th Cong., 1st Sess. 347 (1977), U.S. Code Cong. & Admin.News 1978, 5787, 6303.

■ That the license agreements are executory contracts is evident from the fact that both parties have continuing obligations under the agreements. *See generally Lubrizol Enterprises v. Richmond Metal Finishers,* 756 F.2d 1043, 1045 (4th Cir.1985), *cert. denied,* 475 U.S. 1057, 106 S.Ct. 1285, 89 L.Ed.2d 592 (1986). For example, Tambellini may not terminate the trademark registration absent compliance with certain provisions in the agreements.[9] The licensee has a continuing obligation to permit Tambellini to inspect its premises and to use the trademark only in connection with certain items. Tambellini can terminate the agreements only under certain conditions and, absent those, it has an obligation to continue to permit the licensee to use the trademarks and to automatically renew the 99 year period. *See* Exhibits 1, 11.

The question is whether the Trustee is prohibited from selling the license agreements under § 363(b) if he first does not file, and have approved by the court, a § 365(d)(1) motion to assume the agreements.

Since the enactment of § 365 in 1978, authority has been divided as to whether a formal motion to assume is required or whether the Trustee may assume by word or conduct which unequivocally indicates an intent to assume. Under § 70b of the former Bankruptcy Act, Trustee conduct which did not include filing of a motion of any type often was construed to constitute assumption or rejection since the Act mandated no formal procedure. *See Brown v. Presbyterian Ministers' Fund,* 484 F.2d 998, 1007 (3d Cir.1973); *Forgee Metal Products, Inc.,* 229 F.2d 799 (3d Cir.1956). Under the 1978 Bankruptcy Code the weight of authority requires that some type of motion be filed and that the Trustee's conduct or words which did not include a motion were not the equivalent of an assumption. *See, e.g., Matter of Woodson Hays, Inc.,* 69 B.R. 303 (Bankr.M.D.Fla. 1987) (written communications between Debtor and landlord by which Debtor agreed to pay rent arrearages, to assume lease and to execute promissory note insufficient to comply with § 365); *In re O.P. Held, Inc.,* 77 B.R. 388 (Bankr.N.D.N.Y. 1987) (lease deemed rejected when Trustee failed to file motion to assume within sixty days notwithstanding in-court statement made within sixty-day period of intention to file motion to assume); *In re Treat Fitness Center, Inc.,* 60 B.R. 878 (9th Cir.B.A.P. 1986) (court rejected contention that discussions between landlord and debtor-in-possession concerning assignment, sublease or sale of the lease was equivalent to an assumption). In these cases, however, the

9. Although the 1986 agreement provides that Tambellini shall register the new mark, this obligation remains unfulfilled. That a trademark is not registered invalidates neither the protection of the trademark laws nor the trademark ownership rights, and a common law trademark exists. *Warner Brothers, Inc. v. Gay Toys, Inc.,* 658 F.2d 76, 78 (2d Cir.1981) (interpreting 15 U.S.C. § 1127); *G's Bottoms Up Social Club v. F.P.M. Industries,* 574 F.Supp. 1490, 1495 (S.D.N.Y.1983).

problem was different from that at bench in that no formal proceedings had been instituted by way of motion to assume or motion to sell. In the instant case the Trustee filed a motion to sell which of necessity incorporates an assumption of the asset to be sold to the extent that the Trustee cannot sell an asset which he has rejected or abandoned.

The Third Circuit recently stated that affirmative action by a Debtor to assume an executory contract is required. *Counties Contracting & Construction Co. v. Constitution Life Ins. Co.*, 855 F.2d 1054 (1988). Although that case is distinguishable from the instant case, this general proposition applies.

An exhaustive examination of cases decided after enactment of the Bankruptcy Code in 1978 has revealed only one reported case, an opinion from this District, which discussed whether a motion to sell a lease brought by the Trustee within sixty days of the date of the order for relief may substitute for a motion to assume the lease. In *Matter of Zacherl Coal Co., Inc.*, 14 B.R. 1001 (Bankr.W.D.Pa.1981),[10] the Trustee petitioned to sell all of Debtor's assets including a lease of coal and mineral rights. The motion to sell was brought within sixty days of conversion of the case from a Chapter 11 to a Chapter 7 and the court stated that the Trustee's affirmative act in moving to sell within the required period "operated as a final and complete assumption of the executory lease and contract" and that the assumption of the lease and contract was done "in such manner as to affirmatively deny their abandonment or rejection by failure to take action within sixty days" of the conversion. *Id.* at 1002.

*In re Dartmouth Audio, Inc.*, 42 B.R. 871 (Bankr.N.H.1984), involved a sale of Debtor's assets including leases. The issue before the court was whether franchise rights were also included in the bidding on a sale of certain lease rights. Although the issue differed from that at bar and the propriety of a sale motion versus an assumption motion was not raised, it is worthy of note that the court confirmed the sale of the leases without first requiring a motion to assume.

Although not all the cases reviewed specifically referred to Bankruptcy Rule 9014, this Rule is the source of the requirement that a formal motion be filed in certain circumstances. Section 365 itself contains no requirement that the Trustee file a motion within sixty days, only that he assume or reject the executory contracts within that time period. 11 U.S.C. § 365(d)(1). Bankruptcy Rule 9014 requires that a motion for relief be filed and that notice and an opportunity to be heard be afforded in all contested matters. Bankruptcy Rule 9014 is equally applicable to motions to assume executory contracts and contested sales and does not distinguish between them. *See* Bankruptcy Rules 6006(a) and 6004(b) respectively. The authority reviewed by the court which denied assumption of executory contracts did so on the ground that no motion to assume executory contracts had been filed. It is significant, however, that in the cases reviewed no motion of any sort had been filed by the party purporting to assume executory contracts by conduct. Of the two cases discovered by this court which concerned sales of executory contracts, only one addressed directly the question of whether a motion to sell brought within the sixty day period effected an assumption of the contract. In both cases, the sales were confirmed. *In re Dartmouth Audio, Inc.; Matter of Zacherl Coal Co., Inc.* [11]

**10.** Although the Court in *Zacherl Coal* relied in part on pre-Code opinions of the Third Circuit, its analysis is persuasive particularly when viewed in light of Bankruptcy Rule 9014 which governs both sale proceedings and actions on executory contracts. *See* discussion, *infra.*

**11.** Tambellini argues that the sale at bar cannot be confirmed because the hearing was not held until 63 days after the order for relief was entered. In *Matter of Zacherl Coal Co., Inc.*, the hearing on the motion to sell was held within the sixty (60) day period. We do not think that this is a dispositive factor. The plain language of the Code and Rules impose no such requirement. Only § 365 imposes a time limit and that restriction is applicable only to the Trustee's conduct with respect to the executory contract. There is no statutory time limitation imposed on the Court. *Accord Victoria Station, Inc.*, 69 B.R. 110 (9th Cir. BAP 1986); *By-Rite Distribut-*

This court agrees that a motion to sell rights under an executory contract filed within sixty days of the order for relief is sufficient to meet all applicable Code and Rule provisions governing executory contracts. The procedure mandated by Bankruptcy Rule 9014 for sales and executory contracts was complied with by the Trustee when he filed the motion to sell. The other requirements of the Rule were met in that notice and opportunity to be heard were afforded Tambellini. The requirements of § 365 also were met in that the Trustee acted within sixty days.

The only distinction between a sale of an executory contract and a sale of any other property is that § 365 requires that the Trustee act within sixty days with respect to any property which is also an executory contract. Regardless of whether the Trustee seeks to assume an executory contract or to sell it, he must comply with Bankruptcy Rule 9014. When, as in this case a motion to sell and a motion to assume and sell would have the identical effect and when the procedural safeguards are the same, the motion to sell is sufficient and a motion to assume and sell would be superfluous.[12] *In the Matter of O.P. Held, Inc.*, 77 B.R. 388 (Bankr.N.D.N.Y.1987), the court stated that

> the majority of courts considering the correct method whereby a trustee or debtor-in-possession assumes an unexpired lease, have concluded that *a motion in the nature of a contested matter as provided for in Rule 9014* of the Federal Rules of Bankruptcy Procedure ... *is the most appropriate, if not the exclusive method, whereby an unexpired lease may be assumed.*

*Id.* at 390 (emphasis added). Therefore, this court concludes that filing a motion to sell in compliance with Bankruptcy Rule 9014 is sufficient to effect a transfer of rights under an executory contract and that a Trustee need not file a formal motion to assume an agreement before he may be permitted to sell the rights existing under it.

A motion to sell brought within the sixty day period and in accordance with Bankruptcy Rule 9014 serves the purpose for which § 365 was enacted; that is, it is an unequivocal act performed in a timely manner to dispose of estate property which happens to be an executory contract. It would be counterproductive to require the Trustee and an overburdened Bankruptcy Court to duplicate the effort, time and expense involved in filing two separate motions, providing notice twice, and conducting two separate adjudications to dispose of one estate asset simply because the asset may be characterized as an executory contract. It would be equally nonsensical to require the Trustee to use the technical term "assume" in a motion to sell in order to have the sale before the court in a confirmable posture.[13] *See Tigr Restaurant v. Rouse S.I. Shopping Center*, 79 B.R. 954 (E.D.N.Y.1987); *By-Rite Distributing, Inc.*, 55 B.R. 740 (D.Utah 1985); *Victoria Station, Inc.*, 69 B.R. 110 (9th Cir. BAP 1986).

Accordingly, this court holds that the sale of the executory contracts under the

*ing Inc.*, 55 B.R. 740 (D. Utah 1985). *See also Tigr Restaurant v. Rouse S.I. Shopping Center*, 79 B.R. 954, 958 (E.D.N.Y.1987) ("virtually all" courts deciding the issue have ruled that the court need not hear a motion on an executory contract within sixty days).

12. Furthermore, under the Lanham Act a Trustee in bankruptcy may sell the trademark itself. *See John Rissman & Son v. Gordon & Ferguson, Inc.*, 78 F.Supp. 195 (D.Minn. 3rd Div.1948). *See also May v. Goodyear Tire & Rubber Co.*, 10 F.Supp. 249 (D.Mass.1935); 15 U.S.C. § 1060. Therefore, rights under a license to use the trademark may certainly pass through a bankruptcy sale. Tambellini contends in its brief that the Trustee's motion to sell was defective because, *inter alia*, the fair market value of the trademark was not alleged; however, the trademark is not what is sold here.

13. Parenthetically the court notes that when the intended disposition of an executory contract is to a non-debtor third party, a motion to sell may be more appropriate than one to assume inasmuch as circumstances may prohibit or make impractical the implementation by the Trustee of such § 365 requirements as a cure of default or adequate assurance of future performance. An offer from a third party to buy typically addresses the default and provides the cure and/or adequate assurance needed to satisfy § 365.

facts at bar is confirmable notwithstanding the fact that the Trustee did not file a separate motion to assume or use the word "assume" in his motion to sell. The Trustee filed his motion to sell within sixty days of the order for relief and the proceedings otherwise complied with the applicable provisions of the Bankruptcy Code and Rules governing sales and governing the disposition of executory contracts. The motion to sell is, in such circumstances, the equivalent of a motion to assume or to assume and sell or to assume and assign and serves the purpose for which § 365 and Bankruptcy Rules 6006 and 9014 were enacted.

The motion to sell license agreements and the personal property of the estate is confirmable. An appropriate Order will be entered.